**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ABEL BELTREZ,

      Petitioner,

v.                             Case No. 8:23-cv-74-WFJ-CPT
                             (Criminal Case No. 8:19-cr-489-WFJ-CPT)

UNITED STATES OF AMERICA,

      Respondent.

_____/

## <u>ORDER DENYING BELTREZ'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255</u>

Before the Court is Mr. Abel Beltrez's motion to vacate sentence under 28 U.S.C. § 2255. Doc. 1. The United States filed a response. Civ. Doc. 3. It appears the motion for relief is timely, as the Government concedes. *Id*. at 7. The Court denies the motion. Record cites are to the underlying criminal case, Case No. 8:19-cr-489-WFJ-CPT, denoted as "Doc." followed by the number.

Beltrez pleaded guilty with a plea agreement to one count of conspiracy to possess with intent to distribute a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Docs. 1, 46. He received a sentence within the statutory maximum, and the U.S. Eleventh Circuit affirmed the sentence upon appeal against a contention that it was substantively. See Doc. 138. Had Beltrez gone to trial he would have been facing a life-sentence exposure due to the

1

fentanyl-induced death that could be directly sourced and causally attributed to his drug dealing.  The evidence showed that Beltrez was the older, more controlling resident of the house where drugs were sold, and he supplied and used addicted persons to deliver the narcotics on his behalf.  *See* Doc. 138 at 2.

### A. Procedural History

During his plea colloquy, Beltrez stated that he read the plea agreement in its entirety before he signed it.  Doc. 130 at 12.  He understood that the plea agreement was precatory and did not bind the Court as to sentencing.  *Id.* at 16–17.  His agreed there was no force or coercion to his decision to plea guilty.  *Id.* at 18, 21.  It was Beltrez's decision to plead guilty after he "had a full and fair opportunity to discuss the matter" with counsel.  *Id.*

The court explained to Beltrez that he faced up to 20 years' imprisonment.  *Id.* at 22.  Beltrez confirmed that he discussed the sentencing guidelines with counsel.  *Id.* at 24.  Once again, Beltrez recognized that this Court would determine his advisory guidelines range and "ultimately give [him] a sentence that he believes is reasonable under the law."  *Id.*  The court warned him that the sentencing guidelines were advisory and that this Court has "the authority to depart upward or downward" from that range.  *Id.* at 24–25.  Beltrez understood that he could not withdraw his guilty plea if counsel's sentencing estimate was wrong.  *Id.* at 25.

Beltrez reviewed and understood the charge he faced and its elements and he

affirmed the accuracy of the factual basis. *Id.* at 27–28, 30–31. He had no other questions for the court before pleading guilty. *Id.* at 32. Having determined that a factual basis supported the charges, the court found Beltrez's guilty plea to be both knowing and voluntary. *Id.* at 33–34. As a result, this Court adjudicated him guilty. Doc. 69.

Despite a lengthy criminal history, Beltrez's criminal history was only a category of III. Doc. S-78–Presentence Investigation Report ("PSR") ¶¶ 34–54, 56. Coupled with his total offense level (20), Beltrez's advisory guidelines range was 41 to 51 months' imprisonment. *Id.* ¶¶ 31, 92.

The Probation Office listed several reasons for an upward departure: Beltrez's underrepresented criminal history, the victim's death that resulted from the crime, and to reflect the seriousness of the offense when a charge was not pursued for other reasons. *Id.* ¶¶ 107–09. Beltrez objected to these grounds and argued that enhancing his sentence based on the death would violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See* PSR Addendum.

At the time of sentencing, Beltrez was satisfied with counsel's representation. Doc. 132 at 3. This Court adopted the Probation Office's summary of the factual conduct and advisory guidelines calculation. *Id.* at 7.

This Court varied upward and found that the death was a "reasonably foreseeable outcome of a drug distribution conspiracy." *Id.* at 35. This Court sentenced Beltrez to 240 months' imprisonment. Doc. 107. Counsel objected "[a]s to

3

the death and to the criminal history not being sufficient." Doc. 132 at 42.

Beltrez appealed. Doc. 113. On appeal, he argued that his sentence was substantially unreasonable because it was based on uncharged conduct and that this Court violated his Fifth and Sixth Amendment rights with the upward variance. *See United States v. Beltrez*, No. 21-11727, Appellant's Initial Brief, 2021 WL 5842286 (11th Cir. Dec. 6, 2021). The Eleventh Circuit rejected these arguments and affirmed Beltrez's sentence. *See United States v. Beltrez*, No. 21-11727, 2022 WL 2092328 (11th Cir. June 10, 2022) (unpublished) (*per curiam*).

Now, Beltrez seeks to vacate his conviction pursuant to 28 U.S.C. § 2255. In his motion, Beltrez argues that his former counsel told him that if he pleaded guilty, he would not be enhanced for the death (Ground One). Civ. Doc. 1 at 4. He further argues that this Court's sentence violates his Fifth, Sixth, and Eighth Amendment rights because there was insufficient evidence to support its findings and a jury did not find him guilty of the death (Grounds Two and Three). *Id.* at 6–7. Beltrez also requests that this Court stay his proceedings pending *McClinton v. United States*, No. 21-1557 , a case in the U.S. Seventh Circuit (Ground Four). *Id.* at 8.

## B. Relevant Background Facts

Mr. Beltrez was a drug dealer and permitted drug users—including his codefendant Michael Phillips—to live at his home if they sold drugs for him. Doc. 46 at 14; *see also* PSR ¶ 14. Beltrez and Phillips agreed to sell fentanyl out of the

house where they lived.  Doc. 46 at 14.  The drugs which killed the decedent in this case came from Beltrez, as was established at sentencing.

The factual basis of the PSR—which Beltrez did not dispute, Doc. 132 at 4—included the toxicologist's conclusion that the substance that resulted in decedent's death, the substance sold to the confidential informant ("CI"), and the substance found in Beltrez's possession all "had the same composition of fentanyl and the cutting agent which suggests that they came from the same larger batch of drugs." PSR ¶ 109.  The basis also included that a portion of the money that the CI had used to buy the drugs had been found in Beltrez's wallet.  PSR ¶ 108.

During sentencing, codefendant Phillips testified that all the drugs he sold were from Beltrez and that Beltrez received the money from the sales.  Doc. 132 at 10, 19.  The day of decedent's death, Phillips sold the decedent what he thought was heroin but was actually fentanyl.  *Id.* at 11.  Phillips received those drugs from Beltrez.  *Id.* at 11–12.

The CI twice went to the pair's home and purchased fentanyl from Phillips. *Id.*  Later that night, authorities executed a search warrant at their home.  *Id.* Authorities located about 15 grams of a substance containing fentanyl on Beltrez. *Id.*  As the Eleventh Circuit noted, "Beltrez had managed to insulate himself from the consequences of the conspiracy by using the other residents of the house to conduct risky drug transactions like the one that caused [decedent's] overdose." Doc. 138 at 3.

This Court relied on other 18 U.S.C. § 3553 factors to support its sentence—not solely the death from Beltrez's illicit wares.  These factors included Beltrez's active membership in the Almighty Latin King and Queen Nation gang, that Beltrez's criminal history displayed "continued recidivism" where "crime stopped only for appreciable periods during prison stays[,]" and that Beltrez's distribution method was "unusually pernicious" because he "avoided getting his hands dirty by employing heroin junkies to deliver" the drugs in exchange for room, board, and heroin fixes.  Doc. 108 at 4.  This Court emphasized that Beltrez received leniency from the United States because he was not charged with the death and he narrowly escaped a career-offender designation.  Doc. 132 at 35–37.  This Court praised the quality of counsel's work but found the mitigating factors were "outweighed significantly" by Beltrez's "nonstop criminal activity[.]"  *Id.* at 37–38.  This Court also highlighted the "very significant understatement of the defendant's criminal history[.]"  *Id.* at 39.

The Court of Appeals affirmed that the decedent's death "indicated 'the nature and severity of the criminal activity' in which Beltrez had engaged."  Doc. 138 at 5, citing 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A).

## C. Ground One is Without Merit

In Ground One Mr. Beltrez claims his trial counsel was constitutionally ineffective in advising him that "he would not be enhanced for any deaths that came as a result from the fentanyl."  Doc. 1 at 4.  This ground, in effect, denies that

Beltrez gave a knowing and aware guilty plea.  First, one should note that the sentencing transcript showed a number of reasons for the upward variance, not just the death of a purchaser from Beltrez's conspiracy.

Beltrez states that his former counsel told him that if he pleaded guilty, he would not be enhanced for any death that occurred from his offense.  Civ. Doc. 1 at 4.  Construing his claim liberally, Beltrez appears to challenge the knowing and voluntary nature of his guilty plea.

A thorough plea colloquy can render an involuntary plea claim meritless under the stringent requirements outlined in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart,* 474 U.S. 52 (1985).  In *Hill*, the Supreme Court held that "the two part [*Strickland*] test applies to challenges to guilty pleas based on ineffective assistance of counsel" and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  474 U.S. at 58–59.  Under Rule 11, the court must inform the defendant of any possible maximum penalty and any mandatory-minimum penalty he will be subjected to by pleading guilty, and ensure that the defendant understands the sentencing range. Fed. R. Crim. P. 11(b)(1)(H)–(I).  Rule 11 also "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea."  *United States v. Gandy*, 710 F.3d 1234, 1240 (11th Cir. 2013) (citation omitted).

"There is a strong presumption that statements made during the plea colloquy are true," and a petitioner "bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (*per curiam*) (citations omitted).

In the context of a petitioner's decision to plead guilty, the prejudice prong requires the petitioner to show that, but for counsel's incorrect advice, the petitioner would not have pleaded guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *accord Hill*, 474 U.S. at 60 (declining to address *Strickland*'s deficient-performance prong when defendant's allegations were insufficient to establish prejudice prong); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) (same).

An erroneous sentencing prediction does not establish ineffective assistance or render a knowing and voluntary guilty plea invalid.  *See United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of the defendant's motion to withdraw his guilty plea, in part because, even though defense counsel had misrepresented the length of the potential sentence, the defendant was informed of the possible sentence during the plea colloquy); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975) (good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary).  Indeed, entering a

8

guilty plea is "a grave and solemn act," not merely a temporary position "reversible at the defendant's whim." *United States v. Hyde*, 520 U.S. 670, 677 (1997).

While under oath, Beltrez stated that he reviewed the plea agreement in its entirety and wanted to plead guilty "after having had a full and fair opportunity to discuss the matter" with counsel.  Doc. 130 at 12, 21.  He recognized that it was up to this Court to impose a sentence that it believed was "reasonable under the law." *Id.* at 16–17, 24.  The court reminded Beltrez that he faced a 20-year maximum sentence.  *Id.* at 22.  Beltrez understood that the sentencing guidelines were advisory and he could receive an upward (or downward) departure from that range.  *Id.* at 24–25.  Most importantly, Beltrez knew that he could not withdraw his guilty plea if counsel's sentencing guidelines estimate was wrong. *Id.* at 25.

Defense Counsel Anne Borghetti states that she told Beltrez throughout their meetings that "he could be enhanced under the sentencing guidelines" for the death even though he was not charged with it.  *See* Civ. Doc. 3-2 at 2 (Affidavit of Anne Borghetti).  She met with Beltrez on numerous occasions where they discussed the case, sentencing guidelines, "and defense strategy."  *Id.* at 2–3.  Ms. Borghetti warned Beltrez that he could qualify as a career offender and that the "prosecutor was seeking an extensive sentence."  *Id.* at 3.  Ms. Borghetti previously handled a case with similar facts, so she knew the United States may request a lengthy sentence, so she was "well aware of the potential penalties and advised Mr. Beltrez accordingly."  *Id.* at 4.  This Court is familiar with Borghetti

as one of the top practitioners in the area.

It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689.  Indeed, Beltrez knew at the time of his change of plea that he faced a maximum sentence of 20 years.  Doc. 130 at 22, 24.  And a § 2255 motion is not designed to account for buyer's remorse regarding a petitioner's decision to plead guilty.  *Monsegue v. United States*, No. CV416-021, 2017 WL 1128455, at *4 (S.D. Ga. Mar. 24, 2017) (citations and quotations omitted); *see also Nelson v. United States*, No. CV615-021, 2015 WL 4756975, at *1 (S.D. Ga. Aug. 11, 2015) ("Nelson has wasted this Court's time with a 'buyer's remorse' filing.  He chose to plead guilty with full knowledge of the consequences.  Now he must live with those consequences.").

### D.  Ground Two is Meritless, and Procedurally Defaulted

In Ground Two Mr. Beltrez contends his 240-month sentence constitutes "cruel and unusual punishment" in violation of the Eighth Amendment to the U.S. Constitution.  This is a frivolous claim.  Mr. Beltrez's history showed he lived a life of crime, was a member of an organized crime group, and was the boss of a stash house that he used to sell (sometimes fatal) heroin/fentanyl through addicted persons who did his bidding.  As the Eleventh Circuit noted, "even though he was a key player in the operation, Beltrez had managed to allocate most of the risk to his subordinates."  Doc. 138 at 3 (describing also Beltrez's understated criminal history category).  He was shown to be a lifelong recidivist with no appreciable

work history.  He was sentenced within the statutory maximum.  That ends the inquiry.

In any event, this issue was squarely available to present to the Court of Appeals, and was not presented.  *See* Civ. Doc. 1 at 4.  Thus. procedural default also precludes its consideration.  "[A] collateral challenge may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165.  "Once the defendant's chance to appeal has been waived or exhausted," courts "are entitled to presume that [the defendant] stands fairly and finally convicted."  *Id*. at 164.  The claim is barred from consideration on collateral review.  *Bousley v. United States*, 523 U.S. 614, 622–24 (1998).

Mr. Beltrez would be forgiven this default if he could establish "cause and prejudice."  This entails "(1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains."  *Frady,* 456 U.S. at 167–68 (internal quotation marks omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1234 (stating petitioner "must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error") (emphasis in original)).  If the petitioner fails to prove either prong, the court need not decide whether he has proven the other.  *Frady*, 456 U.S. at 168.

For purposes of procedural default, "cause … ordinarily requires a showing of some external impediment preventing Beltrez from constructing or raising the claim."  *See Murray v. Carrier*, 477 U.S. 478, 492 (1986); *accord Coleman v.*

*Thompson*, 501 U.S. 722, 753–55 (requiring a petitioner to show that "some objective factor external to the defense" impeded his efforts to present an issue for judicial review earlier).  In some circumstances, a petitioner can establish cause based on ineffective assistance of counsel, *see Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002), but to do so, the petitioner must fully allege and prove deficient performance that worked to petitioner's actual and substantial disadvantage, *see Reece v. United States*, 119 F.3d 1462, 1465–68 (11th Cir. 1997). No such showing can be found in this record.

In order to succeed, Mr. Beltrez's "claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).  Beltrez has not satisfied that standard.  To show that he suffered constitutionally ineffective assistance of counsel, Beltrez must allege and prove that his counsel's deficient performance worked to his actual and substantial disadvantage.  *Reece*, 119 F.3d at 1465–68.  Beltrez must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. at 689 (citations omitted).  To prove incompetence, "[a] petitioner

must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). Because of the "strong presumption in favor of competence," a petitioner seeking to prove a Sixth Amendment violation "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (*en banc*).

The cause of non-preservation of Ground Two is the frivolity of this eighth amendment claim, not any failing on Beltrez's skilled attorney's part. There was no "cause," and the default of a frivolous issue means perforce there was no prejudice to Mr. Beltrez.

### E. Ground Three is Barred by Prior Resolution

In Ground Three Mr. Beltrez claims the Court erred in enhancing his sentence for the fentanyl death without requiring that fact to be determined beyond a reasonable doubt by a jury. He contends that this is a requirement of the fifth and sixth amendment. This issue was already decided by the Court of Appeals on de novo review of the sentence. *See* Doc. 138 at 6–7. That ends the matter here. "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *See Nyhuis*, 211 F.3d at 1343.

13

## F.  Ground Four is Without Merit

In Ground Four Mr. Beltrez urges the Court to withhold considering this Petition until final resolution of *McClinton v. United States,* 23 F.4th 732 (7th Cir. 2022) (acquitted conduct could be considered at sentencing), *certiorari filed* June 14, 2022.  Mr. Beltrez hopes that the Supreme Court on certiorari review of McClinton's case will overturn prior rulings concerning acquitted conduct at sentencing.  This is no grounds to delay considering the instant Petition.  Nor did the Court consider acquitted conduct at Mr. Beltrez's sentencing.  If the Supreme Court grants certiorari review in *McClinton,* and if a ruling is favorable to Mr. Beltrez concerning uncharged (not acquitted) conduct, and if the ruling applies retroactively, only then might Mr. Beltrez have an issue under 28 U.S.C. § 2255(h)(2).

## G. No Evidentiary Hearing is Necessary

To establish entitlement to an evidentiary hearing on a claim of ineffective assistance of counsel, a petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance."  *Hernandez v. United States*, 778 F.3d 1230, 1232–33 (11th Cir. 2015).  Beltrez has the burden of establishing the need for an evidentiary hearing, *see Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (*en banc*), and he would be entitled to a hearing only if his allegations, if proved, would establish a right to collateral relief, *see Townsend v. Sain*, 372 U.S. 293, 307 (1963).

14

This Court may consider the entire record when determining whether to hold an evidentiary hearing.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).  Summary dismissal is warranted when "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]"  *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003) (quoting 28 U.S.C. foll. § 2255).  Accordingly, no hearing is required when the record establishes that a § 2255 claim lacks merit, *see United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted, *see McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  Similarly, no hearing is required when the petitioner's allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.  *Aron v. United States*, 291 F.3d 708, 714–15 (11th Cir. 2002) (citation omitted).

## CONCLUSION

Ground One is meritless, Ground Two is procedurally defaulted and frivolous on the merits.  Ground Three was previously resolved against Petitioner on direct appeal and is meritless, and Ground Four is not cognizable and a premature claim.

Accordingly, the motion to vacate (Dkt. 1) is denied.  No Certificate of Appealability is appropriate here.  *See* 28 U.S.C. § 2253(c)(3).  The Clerk will close this file.

**DONE AND ORDERED** at Tampa, Florida, on April 17, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE